**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000659
11-OCT-2016
08:39 AM**

NO. CAAP-15-0000659

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


JAMES B. NUTTER & COMPANY,
Plaintiff-Appellant/Cross-Appellee,
v.
FAUSTINO DASALLA DOMINGO,
Defendant-Appellee/Cross-Appellant,
and
SECRETARY OF HOUSING AND URBAN DEVELOPMENT,
HAWAIIAN PARADISE PARK OWNERS ASSOCIATION,
Defendants-Appellees
and
JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS 1-10,
DOE CORPORATIONS 1-10, DOE ENTITIES 1-10,
and DOE GOVERNMENTAL UNITS 1-10, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 12-1-0226)


SUMMARY DISPOSITION ORDER
(By:  Foley, Presiding J., Fujise and Leonard, JJ.)

Plaintiff-Appellant/Cross-Appellee James B. Nutter &
Company (**JBNC**) appeals and Defendant-Appellee/Cross-Appellant
Faustino Dasalla Domingo (**Domingo**) cross-appeals from the
"Amended Judgment Superceding Judgements [sic] Filed on January
15, 2015 and February 4, 2015" entered on August 10, 2015 in the
Circuit Court of the Third Circuit[1] (**circuit court**).

On appeal, JBNC contends the circuit court erred by (1)
denying its motion for summary judgment; (2) granting summary
judgment in favor of Domingo and awarding Domingo $24,000 plus

_____

[1] The Honorable Glenn S. Hara presided.

attorneys' fees and costs; and (3) awarding attorneys' fees under the assumpsit statute to a pro bono attorney representing Domingo.

On cross-appeal, Domingo contends the circuit court erred in denying Domingo's motion for Hawai'i Rules of Civil Procedure (**HRCP**) Rule 11 sanctions against JBNC and/or its attorneys.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments and the issues raised by the parties, as well as the relevant statutory and case law, we conclude that both JBNC's and Domingo's appeals are without merit.

## I.    Motion for Summary Judgment (MSJ)

### A.    JBNC's MSJ

JBNC contends the circuit court erred in denying the May 17, 2013 "Plaintiff's Motion for Summary Judgment and Decree of Foreclosure Against All Defendants on Complaint Filed April 19, 2012" (**JBNC's MSJ**) and in concluding that there were "genuine issues of material fact regarding a default of the terms of the mortgage which supports the claim for foreclosure." JBNC argues,

> The Loan Agreement, the Note, and the Mortgage were all dated December 11, 2007 and were unquestionably part of the same reverse mortgage transaction, wherein JBNC agreed to loan money to Domingo, to be repaid with interest upon his death or other event of default, in exchange for a security interest in the Property. As part of this transaction and to protect JBNC's security interest, Domingo was obligated to make certain repairs to the property by June 17, 2008 as set forth in the Repair Rider to the Loan Agreement. When Domingo failed to make the necessary repairs by June 17, 2008, he was unquestionably in breach of his obligations under the Loan Documents and JBNC was entitled to call the loan due in full. Because Domingo failed to come forward with any evidence that he did, in fact, make the necessary repairs by June 17, 2008 (and because he failed and refused to repay the loan in full), JBNC was entitled to summary judgment on its Foreclosure Complaint.

JBNC attached to its MSJ a "Declaration of Indebtedness" signed by Bruce Huey, Vice President of JBNC. Huey stated in his declaration, with no mention of the personal knowledge of the details of the default on which he based his statement, "[Domingo] defaulted in the observance and performance of the terms, covenants and conditions by failing to repair the property, as required by the Repair Rider to the Loan Agreement,

2

in a timely manner." JBNC did not cite to or provide any evidence showing that Domingo failed to comply with the terms of the Repair Rider.

In Ralston v. Yim, 129 Hawai'i 46, 292 P.3d 1276 (2013), the Hawai'i Supreme Court clarified the movant's burden on summary judgment in cases in which discovery has not concluded. The supreme court summarized:

> [T]his court's case law indicates that a summary judgment movant may satisfy his or her initial burden of production by either (1) presenting evidence negating an element of the non-movant's claim, or (2) demonstrating that the nonmovant will be unable to carry his or her burden of proof at trial. Where the movant attempts to meet his or her burden through the latter means, he or she must show not only that the non-movant has not placed proof in the record, but also that the movant will be unable to offer proof at trial. Accordingly, in general, a summary judgment movant cannot merely point to the non-moving party's lack of evidence to support its initial burden of production if discovery has not concluded.

Id. at 60-61, 292 P.3d at 1290-91 (internal citations omitted). JBNC's burden, as explained in Ralston, was to prove that at trial Domingo would be unable to prove that the required repairs were done. JBNC failed to meet its burden on summary judgment because Huey's declaration did not prove that Domingo would be unable to show at trial that he did not comply with the terms of the Repair Rider. Huey's declaration merely contained a conclusive statement that "Domingo defaulted" without providing any proof of the default. The circuit court did not err in denying JBNC's MSJ.

## B. Domingo's MSJ

JBNC also contends that the circuit court erred in granting summary judgment in favor of Domingo.[2] JBNC argues that

---

[2] On this point of error, JBNC fails to comply with the requirements of Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4), which provides, in pertinent part:

    Rule 28. BRIEFS.

    . . . .

    (b) Opening brief. Within 40 days after the filing of the record on appeal, the appellant shall file an opening brief, containing the following sections in the order here indicated:

    . . . .

(continued...)

"[Domingo's] Motion to Dismiss or for Summary Judgment on Complaint Filed April 19, 2012, for an Award of $24,000.00, and for Attorneys' Fees and Costs" (**Domingo's MSJ**) filed August 7, 2014 was (1) procedurally deficient; (2) not supported by admissible evidence of Domingo's repairs to the property; and (3) improperly requested judgment in the amount of $24,000.

JBNC's first argument is that because Domingo's MSJ was filed over a year after the circuit court's deadline for dispositive motions, the circuit court was barred from granting Domingo's motion.[3] JBNC cites only to the circuit court's April 26, 2013 order setting a July 10, 2013 deadline for dispositive motions, arguing that the circuit court failed to comply with its own scheduling order. At the time the circuit court set the deadline in the scheduling order, Domingo was representing himself pro se. After the deadline had passed, the circuit court continued to urge Domingo to find pro bono representation, which Domingo secured around the beginning of December 2013.

The circuit court has "inherent equity, supervisory, and administrative powers as well as inherent power to control the litigation process before" it. Enos v. Pac. Transfer & Warehouse, Inc., 79 Hawai'i 452, 457, 903 P.2d 1273, 1278 (1995) (quoting Richardson v. Sport Shinko (Waikiki Corp.), 76 Hawai'i 494, 507, 880 P.2d 169, 182 (1994)). "A court has the discretion to grant or refuse a continuance of a proceeding in the orderly

---

[2](...continued)

> (4) A concise statement of the points of error set forth in separately numbered paragraphs. Each point shall state: (i) the alleged error committed by the court or agency; (ii) where in the record the alleged error occurred; and (iii) where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency. . . .

> Points not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented.

(Emphasis added.)

[3] We note that JBNC failed to raise this argument in its opposition to Domingo's MSJ, and made only a single reference to this argument at the hearing on Domingo's MSJ when counsel for JBNC stated, "I believe also a Motion to Dismiss at this point is untimely," which we consider to have preserved the argument for appeal.

administration of justice." Sapp v. Wong, 62 Haw. 34, 41, 609 P.2d 137, 142 (1980). JBNC has provided no basis for this court to conclude that the circuit court's implied extension of its scheduling order was an abuse of discretion, and we find none, particularly in light of the circuit court's own recognition of the need for Domingo to secure pro bono representation. See Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co., 116 Hawaiʻi 277, 308 n.18, 172 P.3d 1021, 1052 n.18 (2007) (recognizing that a trial court may rule implicitly to extend a pretrial scheduling order to allow for additional discovery).

JBNC also argues that Domingo was not entitled to summary judgment because he was in default at the time the Domingo MSJ was filed, but no default judgment had been entered against Domingo. JBNC's argument is without merit.

JBNC's second and third arguments are raised for the first time on appeal and are therefore deemed waived. See Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., Ltd., 100 Hawaiʻi 97, 107, 58 P.3d 608, 618 (2002) ("Legal issues not raised in the trial court are ordinarily deemed waived on appeal."); see also HRAP Rule 28(b)(4)(D) ("Points not presented in accordance with this section will be disregarded[.]").

II. **Attorneys' Fees**

JBNC challenges the circuit court's award of attorneys' fees to Domingo under Hawaii Revised Statutes (**HRS**) § 607-14 (Supp. 2015). JBNC first argues that the foreclosure process involves two steps, one step in the nature of assumpsit and the other not in the nature of assumpsit. As such, JBNC argues, "the Circuit Court erred when it found that the predominant character of the underlying foreclosure action was in the nature of assumpsit and failed to make any apportionment between Domingo's defense of the assumpsit and non-assumpsit portions of the action." Second, JBNC argues, there was no contractual basis for an attorneys' fees award because the loan documents do not provide for attorneys' fees. Third, JBNC argues, "it was fundamentally improper and constituted a conflict of interest for the Circuit Court to award Domingo prevailing party attorneys' fees at the rate of $300 an hour for an attorney that the Circuit

Court, on its own initiative, selected 'pro bono' to represent Domingo."

## A. Proportional Award Based on Assumpsit and Non-Assumpit Portions of Action

JBNC argues that the circuit court failed to apportion attorneys' fees based on the assumpsit and non-assumpsit portions of JBNC's claims. Furthermore, JBNC argues, "[t]he remedy sought by JBNC was to foreclose its lien and take possession of the Property. Accordingly, the predominant character of the underlying action was not to obtain damages for non-performance of a contract and thus not in the nature of assumpsit."

The circuit court awarded attorneys' fees pursuant to HRS § 607-14, which provides, in pertinent part:

> In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue[.] . . . The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.

"[A]ssumpsit is a common law form of action which allows for the recovery of damages for non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations." TSA Int'l Ltd. v. Shimizu Corp., 92 Hawaiʻi 243, 264, 990 P.2d 713, 734 (1999) (internal quotation marks omitted) (quoting Shulz v. Honsador, 67 Haw. 433, 435, 690 P.2d 279, 281 (1984)).

"[I]n awarding attorneys' fees in a case involving both assumpsit and non-assumpsit claims, a court must base its award of fees, if practicable, on an apportionment of the fees claimed between assumpsit and non-assumpsit claims." Blair v. Ing, 96 Hawaiʻi 327, 332, 31 P.3d 184, 189 (2001). "In ascertaining the nature of the proceeding on appeal, [appellate courts look] to the essential character of the underlying action in the trial court." Id. (brackets omitted) (quoting Leslie v. Estate of Tavares, 93 Hawaiʻi 1, 5, 994 P.2d 1047, 1051 (2000)). "The character of the action should be determined from the facts and issues raised in the complaint, the nature of the entire

grievance, and the relief sought." Blair, 96 Hawai'i at 332, 31 P.3d at 189 (quoting Helfand v. Gerson, 105 F.3d 530, 537 (9th Cir. 1997)).

In Blair, a plaintiff sought relief on two claims, one for the breach of an implied contract and the second for negligence. Blair, 96 Hawai'i at 332, 31 P.3d at 189. The claims were based "on the allegation that [the defendant, an accountant], in providing tax return preparation services, failed to take advantage of certain estate planning techniques that resulted in the loss of savings in excess of $200,000." Id. In evaluating the nature of the plaintiff's claim, the Hawai'i Supreme Court concluded that even the plaintiff's tort claim arose out of the alleged implied contract between the parties because "[w]ithout the implied contract, which could create a cognizable duty, [p]laintiffs would have no negligence claim." Id. Furthermore, the supreme court noted, "the damages alleged were more closely akin to contract damages than to tort damages because they were economic damages arising out of the alleged frustrated expectation that [the defendant] would take advantage of certain tax-saving devices." Id. at 332-33, 31 P.3d at 189-90. The supreme court held that because the negligence claim was "inextricably linked" to the implied contract claim, the entire action could be considered "in the nature of assumpsit." Id. at 333, 31 P.3d at 190.

In comparison, the supreme court held in 808 Dev., LLC v. Murakami, 111 Hawai'i 349, 141 P.3d 996 (2006), that a mechanic's lien application is "not in the nature of assumpsit" because such an action is based on the mechanic's lien statute and does not seek damages for an underlying contract. Id. at 366, 141 P.3d at 1013.

JBNC urges this court to recognize a division between the assumpsit portion of its claim for money damages and the non-assumpsit portion of its claim for a lien foreclosure, and to hold that the circuit court erred by awarding attorneys' fees for the entire action rather than apportioning the fees.

In evaluating JBNC's complaint, we look to the

essential nature of the underlying action and the relief sought. See Blair, 96 Hawai'i at 332, 31 P.3d at 189. JBNC sought, in its complaint, the right to foreclose upon the property. JBNC alleged that because Domingo "defaulted in the observance and performance of the terms, covenants and conditions by failing to repair the property as required by the Repair Rider to the Loan Agreement in a timely manner[,]" "the loan has been called due and payable . . . ." JBNC failed to provide a statutory basis for its right to foreclose in its complaint.[4] JBNC presumably sought a judicial foreclosure of the property under HRS § 667-1.5 (Supp. 2015), which provides, "The circuit court may assess the amount due upon a mortgage, whether of real or personal property, without the intervention of a jury, and shall render judgment for the amount awarded, and the foreclosure of the mortgage. Execution may be issued on the judgment, as ordered by the court."

Because the basis for JBNC's requested relief of the right to foreclose was statutory rather than contractual, the portion of JBNC's action dealing with its right to foreclose on the property does not fall within HRS § 607-14. See 808 Dev., 111 Hawai'i at 366, 141 P.3d at 1013.

Aside from the right to foreclose on the property, however, JBNC sought additional relief in the form of contractual damages, "including principal, interest, costs, expenses or advances, late fees and attorneys' fees[.]" A significant portion of JBNC's requested relief is based on an alleged breach of the Note, Loan Agreement, and Mortgage,[5] and are therefore "in the nature of assumpsit." See Santiago v. Tanaka, 137 Hawai'i 137, 159 n.40, 366 P.3d 612, 634 n.40 (2016) (holding that a

---

[4] JBNC stated in its MSJ that it was entitled to enforce the Note pursuant to HRS § 490:1-201 (2008 Repl.). HRS § 490:1-201 is the "general definitions" section of the Uniform Commercial Code adopted by the Hawai'i legislature and has no apparent connection to JBNC's foreclosure action against Domingo.

[5] The Note, Loan Agreement, and Mortgage, copies of which were attached to the complaint, allow JBNC, as the lender, to require immediate payment in full of all outstanding principal and accrued interest if "[a]n obligation of [Domingo] under the Security Instrument is not performed." The Note allows JBNC to include "costs and expenses, including reasonable and customary attorneys' fees" if it "has required immediate payment in full."

borrower was entitled to attorneys' fees under HRS § 607-14 for a breach of mortgage and breach of note counterclaims against the borrower).

Having determined that JBNC's complaint for foreclosure and contractual damages includes both non-assumpsit and assumpsit claims, we next evaluate whether it is practicable to apportion attorneys' fees between the claims. Both the action for foreclosure and for contractual damages require a default[6] under the terms of the Note and Mortgage. Like the negligence and breach of implied contract claims in Blair, here the foreclosure and breach of contract claims are "inextricably linked" by the default requirement such that "it is impracticable, if not impossible, to apportion the fees between the assumpsit and non-assumpsit claims." Blair, 96 Hawai'i at 333, 31 P.3d at 190. Therefore, the circuit court did not err by failing to apportion fees.

**B.    Contractual Basis for Borrower's Attorneys' Fees**

JBNC next contends the circuit court erred in awarding Domingo attorneys' fees because the loan documents do not provide for attorneys' fees for Domingo, the borrower. JBNC does not cite any authority that requires a contract provide explicitly for attorneys' fees before a court may enter attorneys' fees in an action in the nature of assumpsit under HRS § 607-14. The statute itself does not limit recovery of attorneys' fees to contracts with attorneys' fees provisions. For example, HRS § 607-14 provides, "Where the note or other contract in writing provides for a fee of twenty-five per cent or more, or provides for a reasonable attorney's fee, not more than twenty-five per cent shall be allowed." The statute clearly contemplates the recovery of attorneys' fees even where the underlying contract does not include a provision for attorneys' fees. JBNC's argument is without merit.

---

[6] "Default" is defined as, when used as a noun, "[t]he omission or failure to perform a legal or contractual duty; esp., the failure to pay a debt when due," or, when used as a verb, "[t]o be neglectful; esp., to fail to perform a contractual obligation." Black's Law Dictionary, 507 (10th ed. 2014).

### C.    Attorneys' Fees for Pro Bono Representation

Finally, JBNC challenges the circuit court's award of attorneys' fees on the basis that Domingo's attorney was retained on a pro bono basis and should not be entitled to attorneys' fees.  Not only does JBNC fail to cite any authority in support of its argument, the proposition that attorneys' fees cannot be recovered in pro bono cases is incompatible with the purpose of fee-shifting statutes.  See Schefke v. Reliable Collection Agency, Ltd., 96 Hawai'i 408, 447, 32 P.3d 52, 91 (2001) (discussing the necessity of enhancement under the lodestar method of calculating attorneys' fees).  "[I]n many cases, a client will be unable to pay for counsel or will be unwilling to assume the risk of liability for attorney's fees, even if the public interest may be significantly aided by the private litigation."  Id. (citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 749 (1987)); see also Hawai'i Rules of Professional Conduct (**HRPC**) Rule 6.1, cmt. 1 ("Every lawyer, regardless of professional prominence or professional work load, has a responsibility to provide legal services to those unable to pay[.]"); HRPC Rule 6.1, cmt. 4 ("[T]he award of statutory attorneys' fees in a case originally accepted as pro bono would not disqualify such services from inclusion under this section.").  JBNC's argument is without merit.

### III.    HRCP Rule 11 Sanctions

On cross-appeal, Domingo argues that the circuit court abused its discretion in refusing to impose sanctions on JBNC, suggesting that evidence of JBNC's violations of HRCP Rule 11 required the circuit court grant the sanctions.

Domingo cites Lepere v. United Pub. Workers, Local 646, AFL-CIO, 77 Hawai'i 471, 887 P.2d 1029 (1995), for the proposition that a circuit court has no choice but to sanction a party or its counsel where it has determined that the party or its counsel has violated HRCP Rule 11.  See id. at 474, 887 P.2d at 1032.  In 1999, however, HRCP Rule 11 was amended.  The resulting amendment no longer required a court to impose sanctions where it found a violation of the rule, but left the

imposition of sanctions to the court's discretion.[7] Domingo's argument that a circuit court is required to impose sanctions where it finds a violation of HRCP Rule 11 is not supported by Lepere or the rule itself.

The circuit court declined to impose sanctions under HRCP Rule 11 because it found "there is no procedural basis to impose sanctions pursuant to [HRCP] Rule 11." At the hearing on Domingo's HRCP Rule 11 motion, the circuit court addressed trial counsel for Domingo, "Now in this particular instance judgment has already been entered, so what needs to be corrected in terms of a challenged paper, claim, defense, contention, or allegation?" The circuit court was apparently referring to the provision in HRCP Rule 11(c)(1)(A) that states, "A motion for sanctions . . . shall not be filed with or presented to the court unless, within 21 days after service of the motion . . ., the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Presumably, the circuit court viewed the judgments entered against JBNC on January 15, 2015 and February 4, 2015 as having resolved the claims Domingo challenged in his motion.

Domingo argues on appeal that JBNC continued to violate HRCP Rule 11 after the January 15, 2015 and February 4, 2015 judgments when JBNC filed a motion for reconsideration of the

---

[7] In 1995, when Lepere was decided, HRCP Rule 11 stated in pertinent part:

> If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

(Emphasis added.) HRCP Rule 11 was amended December 7, 1999 and became effective January 1, 2000, to read, in pertinent part:

> (c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(Emphases added.)

circuit court's judgment against JBNC.  JBNC's motion for reconsideration of the January 14, 2015 and February 4, 2015 judgments was filed on May 1, 2015, about a week after Domingo filed his HRCP Rule 11 motion on April 24, 2015, and in light of this discrepancy, Domingo's argument appears to be disingenuous.

Based on Domingo's stated bases for bringing the HRCP Rule 11 motion, which were all related to JBNC's complaint, we agree with the circuit court's conclusion that the judgments dismissing JBNC's complaint before Domingo's HRCP Rule 11 motion was filed precluded the circuit court from entering sanctions against JBNC because the offending complaint had been resolved. See HRCP Rule 11(c)(1)(A).

Therefore,

IT IS HEREBY ORDERED that the "Amended Judgment Superceding Judgements [sic] Filed on January 15, 2015 and February 4, 2015" entered on August 10, 2015 in the Circuit Court of the Third Circuit is affirmed.

DATED:  Honolulu, Hawai'i, October 11, 2016.

On the briefs:

David J. Minkin
Jesse J.T. Smith
Kurt W. Klein
(McCorriston Miller Mukai
MacKinnon)
for Plaintiff-Apellant/
Cross-Appellee.

Rebecca A. Copeland
for Defendant-Appellee/
Cross-Appellant.

Presiding Judge

Associate Judge

Associate Judge